**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

SMARTSIGNAL CORPORATION, a Delaware
corporation,

               Plaintiff,

          v.

XU XIAO, a resident of Illinois,

               Defendant.

**No. 10 C 3799**

**The Honorable Rebecca R. Pallmeyer**

**Magistrate Judge Arlander Keys**

**DEFENDANT'S ANSWER AND ADDITIONAL
OR AFFIRMATIVE DEFENSES TO VERIFIED COMPLAINT**

Defendant Xu Xiao (hereafter "Dr. Xu"), by his attorneys, Thomas D. Rosenwein,

Don E. Glickman, Steven H. Jesser and David R. Melton, for his Answer and Additional or

Affirmative Defenses to Verified Complaint, states as follows:

**THE PARTIES**

1.     SmartSignal is a corporation organized under the laws of the State of Delaware
with its principal place of business at 901 Warrenville Road, Suite 300, Lisle, Illinois 60532.

**ANSWER:**

Admitted.

2.     Defendant Xiao is a national of the People's Republic of China.

**ANSWER:**

Dr. Xu is a citizen of the People's Republic of China, having been born there.  However,

he has been a resident of the United States for more than 20 years, is raising his family here and

is registered as a permanent resident of the United States.  Dr. Xu lacks sufficient information as

to the meaning of the term "national" to form a belief as to the remaining allegations of paragraph 2 of the Complaint.

3.     Upon information and belief, Defendant Xiao is a permanent resident of the United States and a resident of the State of Illinois with his principal residence at 507 Dilorenzo Drive, Naperville, Illinois 60565.

**ANSWER:**

Admitted.

### JURISDICTION AND VENUE

4.     This is, in part, an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. § 271 *et seq.*  This is also an action for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, and for unfair competition under the Lanham Act, 15 U.S.C. §1125(a).  The Court has exclusive jurisdiction over the subject matter of these causes of action under 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:**

Dr. Xu admits that this purports to be an action for patent infringement, violation of the Computer Fraud and Abuse Act, and unfair competition under the Lanham Act.  Dr. Xu further admits that the Court has exclusive jurisdiction over the patent claims.  Dr. Xu denies that he has violated any of the aforementioned statutes and denies any remaining allegations of paragraph 4 of the Complaint.

5.     This is also an action for breach of contract and fiduciary duty, misappropriation of trade secrets under the Illinois Trade Secrets Act ("ITSA"), violation of both statutory and common law of Illinois for unfair competition, deceptive business practices and unlawful conversion of property. This Court has subject matter jurisdiction over these state causes of action pursuant to 28 U.S.C. § 1367(a).

**ANSWER:**

Dr. Xu admits that the Complaint purports to state claims for alleged violations of Illinois law and the Court has supplemental jurisdiction at this time over those state causes of action. Dr. Xu denies that he has engaged in any acts sufficient to state a cause of action under Illinois law and denies any remaining allegations of paragraph 5 of the Complaint.

6.      Venue lies in this District pursuant to 28 U.S.C. § 1391 because Defendant Xiao resides in this District and because material acts and omissions giving rise to the claims alleged herein occurred in this District.

**ANSWER:**

Dr. Xu admits that venue lies in this district because he resides here.  Dr. Xu denies any remaining allegations of paragraph 6 of the Complaint.

BACKGROUND
THE TECHNOLOGY AT ISSUE

7.      SmartSignal is a pioneer in the field of methods and systems, including software, for monitoring the health of equipment and systems.  SmartSignal forged the industry with a new technology for monitoring the health of equipment and systems, and thus, its commercial products and services were the first of their kind.

**ANSWER:**

Dr. Xu admits that SmartSignal is in the business of developing and marketing systems used to monitor the status of industrial systems and equipment.  Dr. Xu affirmatively states that many other companies compete in the condition-based equipment monitoring field, including GE Bentley-Nevada, Honeywell International, Inc. and Emerson Process Management.  Dr. Xu lacks sufficient information to form a belief as to the truth of the remaining allegations of paragraph 7 of the Complaint, including the allegations that SmartSignal is a "pioneer" in the

field of using "methods and systems, including software for monitoring the health of equipment and systems," that SmartSignal "forged the industry," and that "its commercial products and services were the first of their kind."

8. Because their products and services were the first of their kind, in order to provide education about, describe, promote, and sell its products and services, SmartSignal created a vocabulary unique to its technology, products and their functionalities and capabilities. This vocabulary became indicative of SmartSignal's technology, products and services. The vocabulary used by SmartSignal was not and is not common parlance.

**ANSWER:**

Dr. Xu admits that SmartSignal uses a few product names that are unique in certain specified areas of commerce, such as "SmartSignal Shield," "SmartSignal" with a swirl design and "EPI Center." Dr. Xu denies that the vocabulary used for describing the processes related to monitoring and controlling industrial systems or equipment is unique to SmartSignal; Dr. Xu affirmatively states that he worked in and obtained a doctorate in that field before his employment with SmartSignal. Dr. Xu lacks sufficient information to form a belief as to what particular terms SmartSignal claims a proprietary interest in, so as to form a belief as to the accuracy of any such contention. Dr. Xu denies any remaining allegations of paragraph 8 of the Complaint.

9. SmartSignal's technology and related products and services are employed in very complex industrial environments. These environments include power generation, including fossil, wind, hydro and nuclear; oil and gas; mining; aircraft; and pulp and paper.

**ANSWER:**

Dr. Xu admits that SmartSignal products and services were employed in the past in the specified environments, other than wind power. Dr. Xu lacks sufficient information as to which

environments, other than the oil and gas industry, SmartSignal's products are currently employed in.

10.     SmartSignal's initial technology was developed in conjunction with the U.S. Department of Energy for use with nuclear facilities. Today, SmartSignal's technology and products and services have been significantly enhanced and refined with newly developed technologies and are used by leading companies, including nuclear facilities in the United States to increase their reliability and safety.

**ANSWER:**

Dr. Xu on information and belief states that SmartSignal's core technology was originally developed at Argonne National Labs and subsequently licensed or sold to SmartSignal. Dr. Xu lacks sufficient information to form a belief as to the accuracy of the allegations of paragraph 10 of the Complaint.

11.     SmartSignal takes great precautions to protect its intellectual property and other proprietary, confidential and trade secret information of its technology, products and business.

**ANSWER:**

Dr. Xu lacks sufficient information to form a belief as to the accuracy or extent of the measures SmartSignal currently takes to protect any proprietary, confidential or trade secret information. Dr. Xu denies the remaining allegations of paragraph 11 of the Complaint.

12.     SmartSignal has invested significant resources to develop its technology and related products and services. This has been done over at least the past ten years and at the cost of many millions of dollars.

**ANSWER:**

Dr. Xu admits that SmartSignal has invested significant resources to develop its products and services. Dr. Xu lacks sufficient information to form a belief as to the remaining allegations of paragraph 12 of the Complaint.

13.    SmartSignal has received numerous U.S. patents on its technology.

**ANSWER:**

Admitted.

14.    On April 5, 2005, U.S. Patent No. 6,876,943 ("the '943 patent"), entitled "Inferential Signal Generator for Instrumented Equipment and Processes," a copy of which is attached hereto as Exhibit 1, was duly and legally issued. The inventor, Stephan W. Wegerich, assigned all right, title and interest in the '943 patent to SmartSignal.

**ANSWER:**

Dr. Xu admits that U.S. Patent No. 6,876,943 was issued on April 5, 2005, that the title of the patent is "Inferential Signal Generator for Instrumental Equipment and Processes," that the inventor listed on the patent is Stephan W. Wegerich, that the rights under the patent have been assigned to SmartSignal and that a copy of the patent accompanies the Complaint as Exhibit 1. Dr. Xu lacks sufficient information to form a belief as to the accuracy of any remaining allegations in paragraph 14 of the Complaint.

15.    On April 29, 2003, U.S. Patent No. 6,556,939 ("the '939 patent"), entitled "Inferential Signal Generator for Instrumented Equipment and Processes," a copy of which is attached hereto as Exhibit 2, was duly and legally issued. The inventor, Stephan W. Wegerich, assigned all right, title and interest in the '939 patent to SmartSignal.

**ANSWER:**

Dr. Xu admits that U.S. Patent No. 6,556,939 was issued on April 29, 2003, that the title of the patent is "Inferential Signal Generator for Instrumental Equipment and Processes," that the inventor listed on the patent is Stephan W. Wegerich, that the rights under the patent have been assigned to SmartSignal and that a copy of the patent accompanies the Complaint as Exhibit 2. Dr. Xu lacks sufficient information to form a belief as to the accuracy of any remaining allegations in paragraph 15 of the Complaint.

16.    On June 19, 2007, U.S. Patent No. 7,233,886 ("the '886 patent"), entitled "Adaptive Modeling of Changed States In Predictive Condition Monitoring," a copy of which is attached hereto as Exhibit 3, was duly and legally issued.  The inventors, Stephan W. Wegerich, David R. Bell, and Defendant Xiao, assigned all right, title and interest in the '886 patent to SmartSignal.

**ANSWER:**

Admitted.

17.    On December 11, 2007, U.S. Patent No. 7,308,385 ("the '385 patent"), entitled "Diagnostic Systems and Methods for Predictive Condition Monitoring," a copy of which is attached hereto as Exhibit 4, was duly and legally issued. The inventors, Stephan W. Wegerich, Andrew Wolosewicz, and R. Matthew Pipke, assigned all right, title and interest in the '385 patent to SmartSignal.

**ANSWER:**

Dr. Xu admits that U.S. Patent No. 7,308,385 was issued on December 11, 2007, that the title of the patent is "Diagnostic Systems and Methods for Predictive Condition Monitoring," that the inventors listed on the patent are Stephan W. Wegerich, Andrew Wolosewicz and R. Matthew Pipke, that the rights under the patent have been assigned to SmartSignal, and that a copy of the patent accompanies the Complaint as Exhibit 4.  Dr. Xu lacks sufficient information

to form a belief as to the accuracy of any remaining allegations in paragraph 17 of the Complaint.

18.     On May 26, 2009, U.S. Patent No. 7,539,597 ("the '597 patent"), entitled "Diagnostic Systems and Methods for Predictive Condition Monitoring," a copy of which is attached hereto as Exhibit 5, was duly and legally issued. The inventors, Stephan W. Wegerich, Andrew Wolosewicz, and R. Matthew Pipke, assigned all right, title and interest in the '597 patent to SmartSignal.

**ANSWER:**

Dr. Xu admits that U.S. Patent No. 7,539,597 was issued on May 26, 2009, that the title of the patent is "Diagnostic Systems and Methods for Predictive Condition Monitoring," that the inventors listed on the patent are Stephan W. Wegerich, Andrew Wolosewicz and R. Matthew Pipke, that the rights under the patent have been assigned to SmartSignal, and that a copy of the patent accompanies the Complaint as Exhibit 5. Dr. Xu lacks sufficient information to form a belief as to the accuracy of any remaining allegations in paragraph 18 of the Complaint.

19.     As part of conducting its business, SmartSignal developed, updates and utilizes a software "tool kit." The tool kit was developed at great expense by SmartSignal, and the tool kit itself along with how it is used are considered trade secrets by SmartSignal.

**ANSWER:**

Dr. Xu admits that SmartSignal uses software in conducting its business and that it has done so in the past. When Dr. Xu was employed there, some of the software and related data bases were developed by SmartSignal; others were not. Dr. Xu lacks sufficient information as to what software SmartSignal is referring as its "tool kit" to form a belief as to the accuracy of any remaining allegations in paragraph 19 of the Complaint.

20.    SmartSignal engineers use the tool kit in their research department for development.

**ANSWER:**

Dr. Xu admits that SmartSignal engineers may use some proprietary software in its research department.  Dr. Xu affirmatively states that many of the tools he used while employed at SmartSignal were developed by him on an ad hoc basis, that some of the tools were previously developed by Dr. Xu during his graduate study work prior to his employment at SmartSignal and that any such tools are not SmartSignal's property.  Dr. Xu also affirmatively states that some tools he used at SmartSignal were licensed from other companies.  Dr. Xu lacks sufficient information as to what SmartSignal is referring to as its "tool kit" to form a belief as to the accuracy of the remaining allegations in paragraph 20 of the Complaint.

21.    SmartSignal engineers also use the tool kit in their Application Engineering Division to set up and build systems that are specially tuned to a client's specific equipment and operation environments.

**ANSWER:**

Dr. Xu admits that while he was employed at SmartSignal, some SmartSignal engineers used some proprietary software in its Application Engineering Division to set up and build systems that were specially adapted to a client's specific equipment and operating conditions. Dr. Xu lacks sufficient information as to what SmartSignal is referring to as "the tool kit" to form a belief as to the accuracy of any remaining allegations in paragraph 21 of the Complaint.

22.    The tool kit is integral to implementation of SmartSignal's technology and related products.  The tool kit has evolved over time and is constantly updated by SmartSignal.

9

**ANSWER:**

Dr. Xu has not been employed at SmartSignal for over three years and, accordingly, lacks any knowledge as to the evolution or updates to any "tool kit," as well as lacking an understanding as to what SmartSignal contends constituted the "tool kit" at any prior points in time.  Dr. Xu lacks sufficient information to form a belief as to any remaining allegations of paragraph 22 of the Complaint.

23.    Within SmartSignal, the only employees that are permitted access to the tool kit are those that need it to perform their job functions. The information contained in the tool kit is covered by non-disclosure agreements.

**ANSWER:**

Dr. Xu lacks sufficient information to form a belief as to the allegations in the first sentence of paragraph 23 of the Complaint.  Dr. Xu denies every software "tool" used by engineers at SmartSignal during the time he was employed there were SmartSignal property or covered by non-disclosure agreements, and affirmatively states that there is no explicit reference to a "tool kit" (or any other specific information claimed to be trade secrets) in Dr. Xu's non-disclosure agreement.  Dr. Xu lacks sufficient information to form a belief as to any remaining allegations of paragraph 23 of the Complaint.

### THE DEFENDANT'S EMPLOYMENT AT SMARTSIGNAL

24.    On April 5, 2001, Defendant Xiao signed an Employee Confidentiality, Intellectual Property and Non-Competition Agreement ("the Employment Agreement") with SmartSignal.  Attached hereto as Exhibit 6 is a true and accurate copy of the Employment Agreement signed by Defendant Xiao.

**ANSWER:**

Admitted.

10

25.     Section 1 of the Employment Agreement states that "I will not copy or make notes of, disclose to anyone outside the Company or use any of the Confidential Information for my own or anyone else's benefit, either during or after the termination of my employment with the Company."

**ANSWER:**

Admitted that this is an accurate excerpt in as far as it goes.

26.     The Employment Agreement defines "Confidential Information" as "information (including information created by me) that is not generally known to the public about the organization, business, or finances of the Company... including, but not limited to, trade secrets or other information about projects, developmental or experimental work, clients, finances, computer programs, databases, processes, formulas, suppliers, business plans, marketing plans, and employees."

**ANSWER:**

Admitted that this is an accurate excerpt in as far as it goes.

27.     Section 3 of the Employment Agreement also states that "During my employment with the Company... I will not... (1) engage in any business activity in the United States which is in direct competition with the primary products or services being developed, manufactured or sold by the Company... (2) solicit for or do business with any customer of the Company or any potential customer… ."

**ANSWER:**

Admitted that this is an accurate excerpt in as far as it goes.

28.     SmartSignal provided Defendant Xiao a company computer during his employment with SmartSignal and provided him with access to its computer network.

**ANSWER:**

Admitted.

11

29.    From 2000 through 2005, Defendant Xiao worked in the Technology Group at SmartSignal. As part of his job responsibilities, Defendant Xiao used the SmartSignal software tool kit for algorithm development.

**ANSWER:**

Dr. Xu admits that from 2000 through late 2004 he worked in the Technology Group at SmartSignal and that as part of his job responsibilities he used SmartSignal software. While some algorithms may have been a part of SmartSignal software, Dr. Xu affirmatively states that much of his work at SmartSignal was done using algorithms that he had developed himself. Dr. Xu lacks sufficient information to form a belief as to the accuracy of the remaining allegations of paragraph 29 of the Complaint.

30.    From 2005 to 2007, Defendant Xiao worked in the Application Engineering Division and was involved in the implementation of the unique models developed for SmartSignal's clients using the SmartSignal tool kit.

**ANSWER:**

Dr. Xu admits that from late 2004 to 2007, he worked in the Application Engineering Division and was involved in the implementation of models developed for SmartSignal's clients. While some algorithms may have been a part of SmartSignal software, Dr. Xu affirmatively states that much of his work at SmartSignal was done using algorithms that he had developed himself. Dr. Xu lacks sufficient information to form a belief as to the accuracy of the remaining allegations of paragraph 30 of the Complaint.

31.    During his time at SmartSignal, Defendant Xiao had access to algorithm code and other proprietary and trade secret information, such as the tool kit, that is core to SmartSignal's technology, products, and services. Aspects of such technology and products are protected by patent, copyright, trade secret and contractual protection.

12

**ANSWER:**

Dr. Xu admits that during his employment with SmartSignal he had access to some algorithm code and some proprietary information. Dr. Xu lacks sufficient information to form a belief as to the remaining allegations of paragraph 31 of the Complaint.

32.     Defendant Xiao resigned from SmartSignal in June of 2007.

**ANSWER:**

Dr. Xu admits that he resigned from SmartSignal in June 2007 to take a full time position as an engineer for BP in its Chicago-area location, with SmartSignal's knowledge.

33.     Upon information and belief, during his employment, Defendant Xiao copied and/or transferred key technology and software, including the tool kit, to an external computer and/or other device without the permission or authorization of SmartSignal.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 33 of the Complaint.

34.     Upon information and belief, Defendant Xiao improperly destroyed company data from the computer issued to him by SmartSignal and on SmartSignal's computer network during his employment at SmartSignal.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 34 of the Complaint.

35.     Upon information and belief, Defendant Xiao concealed both the copying and/or transferring of SmartSignal's information, technology and software, as well as his destruction of company data, from SmartSignal.

**ANSWER:**

Dr. Xu denies that he engaged in any of the acts alleged in paragraph 35 of the Complaint.

36.    Because Defendant Xiao successfully hid his illicit activities, SmartSignal only recently became aware of Defendant Xiao's acts.

**ANSWER:**

Dr. Xu denies that he engaged in any illicit activities.  Dr. Xu lacks sufficient information to form a belief as to the accuracy of any remaining allegations of paragraph 36 of the Complaint, including the allegation that SmartSignal "only recently became aware of Dr. Xu's [alleged] acts."

## THE DEFENDANT'S PROPOSAL TO THE CHINESE GOVERNMENT

37.    In 2004, while still an employee of SmartSignal, Defendant Xiao authored and submitted a request for funding proposal to the Chinese government and others ("the Chinese proposal"), entitled "Development of Intelligent Software System for Early Prediction and Diagnosis of Faults in Industrial Equipment."  A translation of the Chinese proposal is attached hereto as Exhibit 7.

**ANSWER:**

Dr. Xu admits that in 2004 he submitted a paper to a conference in China entitled "Development of Intelligent Software System for Early Prediction and Diagnosis of Faults in Industrial Equipment," a purported translation of which accompanies the Complaint as Exhibit 7. Dr. Xu affirmatively states that the paper contains only publicly available information as well as general terms, and does not disclose any trade secrets or confidential information of SmartSignal. Dr. Xu denies any remaining allegations of paragraph 37 of the Complaint.

14

38.     The Chinese proposal describes concepts that are protected by SmartSignal's intellectual property protections. The Chinese proposal refers to process fault detection and diagnosis ("PFDD") technology and describes such technology as having features and capabilities identical to those of SmartSignal's protected technology.

**ANSWER:**

Dr. Xu admits the 2004 Chinese paper refers to process fault detection and diagnosis technology.  Dr. Xu affirmatively states that this is an area that has been publicly studied and taught in academia for many years prior to 2001, including during Dr. Xu's own graduate studies prior to his employment at SmartSignal.  The paper is a general description of condition based monitoring, based upon publicly available information.   For a similar but much more information-packed public disclosure from the same time frame, see, *e.g.*, "MSET Performance Optimization Through Regularization," Hines, J. Wesley and Usynin, Alexander*, Nuclear Engineering and Technology,* Vol. 37, No. 2, April, 2005, and papers cited therein, available at http://article.nuclear.or.kr/jknsfile/v37/JK0370177.pdf.   Dr. Xu denies that the 2004 Chinese paper discloses any confidential or trade secret information.   Dr. Xu denies any remaining allegations of paragraph 38 of the Complaint.

39.     The Chinese proposal also includes an "Application Examples" section describing "performance tests" for the PFDD technology. Each of these tests are [sic] specific implementations of SmartSignal's technology at SmartSignal's clients at or around the time the Chinese proposal was submitted.

**ANSWER:**

Dr. Xu admits the 2004 Chinese paper includes a section describing in general terms the nature of some examples of performance tests conducted at some past SmartSignal clients. Dr. Xu affirmatively states that any numbers given in the paper are fictional.  Dr. Xu denies that

the paper discloses any confidential or trade secret information. Dr. Xu denies any remaining allegations of paragraph 39 of the Complaint.

40.     Defendant Xiao named only himself as the person to contact regarding the proposal, listing a personal phone number and personal email address as methods of contact.

**ANSWER:**

Admitted. Dr. Xu affirmatively states that had any follow-up inquiries been made, Dr. Xu would have referred them to SmartSignal. There were no follow-up inquiries.

41.     Defendant Xiao did not disclose his involvement with or the existence of this proposal to his superiors at SmartSignal, was not authorized to use or disclose, and did not obtain permission to use or disclose, SmartSignal's confidential, proprietary and trade secret information in connection with the Chinese proposal.

**ANSWER:**

Dr. Xu admits that he did not discuss the 2004 Chinese conference paper with his superiors at SmartSignal. Dr. Xu denies that the 2004 Chinese conference paper discloses any confidential or trade secret information. Dr. Xu lacks sufficient information as to what SmartSignal now contends constituted its trade secrets to form a belief as to the accuracy of the remaining allegations in paragraph 41.

## THE DEFENDANT'S ACTIVITIES WITH CHINA REAL-TIME

42.     China Real-Time Technology Co., Ltd. ("China Real-Time") is a Chinese company with which SmartSignal directly competes within China.

**ANSWER:**

Dr. Xu lacks sufficient information to form a belief as to the accuracy of the allegations of paragraph 42 of the Complaint.

43. China Real-Time markets a product called Intelligent Equipment Management System ("iEM System").

**ANSWER:**

Dr. Xu lacks sufficient information to form a belief as to the accuracy of the allegations of paragraph 43 of the Complaint.

44. Upon information and belief, China Real-Time's iEM System has capabilities virtually identical to SmartSignal's technology and products.

**ANSWER:**

Dr. Xu lacks sufficient information to form a belief as to the accuracy of the allegations of paragraph 44 of the Complaint.

45. In May 2008, China Real-Time published a technical white paper ("the China Real-Time white paper") that "describes the DM [data mining] technical theory of the iEM System and its application." A translation of this white paper is attached as Exhibit 8.

**ANSWER:**

Dr. Xu admits that a purported translation of a 2008 Chinese white paper accompanies the Complaint as Exhibit 8, and that it purports to describe data mining theory related to an "iEM System." Dr. Xu lacks sufficient information to form a belief as to the accuracy of any remaining allegations of paragraph 45 of the Complaint.

46. The China Real-Time white paper claims that China Real-Time "developed" its iEM System and that the system employs non-parametric multi-state simulation technology ("NPMSE"). Defendant Xiao claims to have developed the NPMSE technology.

**ANSWER:**

Dr. Xu admits that the 2008 China Real-Time paper claims it developed the iEM System and that the system purportedly employs "non-parametric multi-state simulation technology." Dr. Xu denies the remaining allegations of paragraph 46 of the Complaint and affirmatively states that he has never had any relationship with China Real-Time or that company's purported products.

47.    The China Real-Time white paper describes the operation and functionality of the iEM System using the unique vocabulary indicative of SmartSignal's proprietary technology and products and an illustration of the type created by SmartSignal. The description of the iEM System is virtually identical to the capabilities and functionalities of SmartSignal's technology and products.

**ANSWER:**

Dr. Xu lacks sufficient information to form belief as to the accuracy of the allegations of paragraph 47 of the Complaint.

48.    Upon information and belief, Defendant Xiao is now and/or has been affiliated with China Real-Time, and this affiliation includes aiding in the development, marketing and implementation of China Real-Time's iEM and NPMSE technology using SmartSignal's legally protected confidential and trade secret information and patented technology. Upon information and belief, these activities of Defendant Xiao have occurred at least in part from this District.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 48 of the Complaint and affirmatively states that he has never had any relationship with China Real-Time or that company's purported products.

## THE DEFENDANT'S ACTIVITIES WITH SOLIDWAY TECHNOLOGY

49.     SolidWay Technology Development Ltd. ("SolidWay") is a Chinese company.

**ANSWER:**

Dr. Xu lacks sufficient information to form a belief as to the accuracy of the allegations

of paragraph 49 of the Complaint.


50.     Upon information and belief, Defendant Xiao co-founded SolidWay sometime in
2007 and/or is affiliated with SolidWay.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 50 of the Complaint.


51.     SolidWay's website identifies Defendant Xiao as a general engineer for SolidWay
and describes that he worked for SmartSignal.

**ANSWER:**

Dr. Xu lacks sufficient information to form a belief as to what SolidWay claims on its

website or elsewhere.  Dr. Xu denies that he is or ever was a general engineer for SolidWay, that

he ever worked for SolidWay, that he has or had any other ownership or employment

relationship with or in SolidWay, and denies any remaining allegations of paragraph 51 of the

Complaint.  Dr. Xu affirmatively states that his only relationships with SolidWay are that it was

founded by a friend of his who had moved back to China, he permitted his friend to use his name

on the one page proposal that accompanies the Complaint as Exhibit 9, and he assisted his friend

with the white paper accompanying the Complaint as Exhibit 10 after he had left SmartSignal.

Dr. Xu further states that neither Exhibit 9 nor Exhibit 10 disclose any trade secrets of

SmartSignal and that he never disclosed any confidential information or trade secrets to

SolidWay. So far as Dr. Xu is aware, Exhibit 9 never resulted in any commercial project and SolidWay is not a competitor of SmartSignal. Dr. Xu has no current relationship or affiliation with SolidWay.

52. SolidWay offers a product called EPMS, Industrial Equipment Condition and Performance Management System ("the EPMS system").

**ANSWER:**

Dr. Xu on information and belief states that the EPMS system never resulted in any commercial projects. Dr. Xu lacks sufficient information to form a belief as to the remaining allegations of paragraph 52 of the Complaint.

53. A "white paper" was published regarding SolidWay's "EPMS industrial equipment operation state diagnosis/analysis and early fault warning system" ("the SolidWay white paper"). A translation of this white paper is attached as Exhibit 9.

**ANSWER:**

Dr. Xu admits that Exhibit 9 accompanying the Complaint purports to be a translation of a one page document describing SolidWay's purported diagnosis and "early fault warning system." Dr. Xu lacks sufficient information to form a belief as to the accuracy of the remaining allegations of paragraph 53 of the Complaint or the purported SolidWay document.

54. The SolidWay white paper claims that the EPMS system was "independently developed" by Defendant Xiao and Mr. Liu Jun and that the EPMS system uses the NPMSE technology.

**ANSWER:**

Dr. Xu admits that Exhibit 9 accompanying the Complaint purports to be a translation of a one page document describing SolidWay's purported diagnosis and early warning system.

Dr. Xu admits that he allowed his friend to use his name in connection with Exhibit 9. The EPMS system is a regression-type vibration monitoring and future-prediction system, based on a simpler and different model than that utilized in the products SmartSignal marketed while he was employed there. Dr. Xu denies that the system utilized any SmartSignal proprietary technology or that he disclosed any confidential or trade secret information to SolidWay in connection with the development of the system. Dr. Xu on information and belief states that the system was never sold or licensed for any commercial use, though an experimental prototype was developed. Dr. Xu lacks sufficient information to form a belief as to the accuracy of the remaining allegations of paragraph 54 of the Complaint or the purported SolidWay document.

55.     The SolidWay white paper describes the EPMS system as having capabilities and functionalities virtually identical to SmartSignal's technology and products.

**ANSWER:**

Dr. Xu denies that the EPMS system functioned in a manner "virtually identical" to the SmartSignal technology or products that existed while he was employed there. Dr. Xu affirmatively states that the field of condition-based equipment monitoring is one that predates SmartSignal, that has been the subject of much public academic study and disclosure over the years and that is engaged in by many companies that compete with SmartSignal, including GE Bentley Nevada, Honeywell International, Inc., Emerson Process Management and others. The EPMS system is similar to systems that Dr. Xu developed during his graduate work, prior to his employment at SmartSignal, and is not based on any SmartSignal confidential information or technology. Dr. Xu lacks sufficient information to form a belief as to the accuracy of any remaining allegations of paragraph 55 of the Complaint.

56.    The SolidWay white paper uses the unique vocabulary indicative of SmartSignal's technology and products.

**ANSWER:**

Dr. Xu denies that SmartSignal possesses any proprietary interest in or has any right to prohibit others from using terms in the condition–based monitoring field.  Dr. Xu lacks sufficient information as to what "vocabulary" SmartSignal is referring to, so as to form a belief as to the accuracy of any remaining allegations of paragraph 56 of the Complaint.


57.    SolidWay's website (www.solidwaytech.cn) also links to a paper entitled "Industrial System Faults Early Forecast and Diagnosis System (EPMS)," which directly links Defendant Xiao to SolidWay and China Real-Time.  This paper describes Defendant Xiao as the "developer" of its technology and contains written descriptions identical to that contained in the China Real-Time white paper.  This paper also provides additional detail about NPMSE, which is used by both iEM of China Real-Time and EPMS of SolidWay.  This additional detail includes, among other similarities, the unique equations used by SmartSignal to describe its technology.  A translation of various portions of this SolidWay paper is attached hereto as Exhibit 10.

**ANSWER:**

Dr. Xu admits that Exhibit 10 accompanying the Complaint purports to be a translation of a white paper describing SolidWay's diagnosis and early warning system.  Dr. Xu admits that he assisted his friend in preparing Exhibit 10.  Dr. Xu denies that Exhibit 10 discloses any trade secret or confidential information of SmartSignal and affirmatively states that any information in the paper was publicly known.  For a similar but much more information-packed public disclosure from the same time frame disclosing, among other things, the equation contained in Exhibit 10, *see, e.g.*, "Multivariate State Estimation Technique for Remaining Useful Life Prediction of Electronic Products," Cheng, Shunfeng and Pecht, Michael, Association for Advancement of Artificial Intelligence, 2007, available at http://citeseerx.ist.psu.edu/viewdoc/download?doi=10.1.1.88.83328rep=repl1&type=pdf.

SmartSignal has itself made publicly available far more revealing technical papers in its own "SmartSignal_Technical Publication Series" (see, e.g. http://www.smartsignal.com/download.aspx?FileId=17 and http://www.smartsignal.com/download.aspx?FileId=21), as well as SmartSignal's own "numerous" published patent specifications, all publicly available prior to the publication of Exhibit 10. Dr. Xu affirmatively states that he never had any relationship with China Real-Time and that his only relationships with SolidWay were those described above in his response to paragraph 51. Dr. Xu lacks sufficient information to form a belief as to the accuracy of the remaining allegations of paragraph 57 of the Complaint.

58.     Upon information and belief, Defendant Xiao developed both EPMS and NPMSE using SmartSignal's confidential and trade secret information, as well as SmartSignal's patented technology. Upon information and belief, Defendant Xiao aids in the marketing, selling and implementation of EPMS systems and NPMSE technology on behalf of SolidWay and himself. Upon information and belief, these activities of Defendant Xiao have occurred at least in part from this District.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 58 of the Complaint.

## FIRST CAUSE OF ACTION: INFRINGEMENT OF THE '943 PATENT

59.     SmartSignal hereby repeats and re-alleges the allegations contained in paragraphs 1 to 58, as if fully set forth herein.

**ANSWER:**

Dr. Xu realleges and incorporates by reference his responses to paragraphs 1-58 of his answer as his response to paragraph 59 of this First Cause of Action as if fully set forth herein.

60.     Upon information and belief, Defendant Xiao by himself and/or through his companies, affiliates, agents, and/or business partners, has in the past and continues to infringe the '943 patent in violation of 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell methods and systems, including software and technology, such as that referred to as iEM, EPMS and NPMSE, for monitoring the health of equipment and systems that are covered by the '943 patent within the United States and within this District.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 60 of the Complaint.


61.     Upon information and belief, Defendant Xiao by himself and/or through his companies, affiliates, agents, and/or business partners, has in the past and continues to induce the direct infringement by end users of the '943 patent in violation of 35 U.S.C. § 271(b) with the specific intent to cause and/or encourage such direct infringement of the '943 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '943 patent.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 61 of the Complaint.


62.     Upon information and belief, Defendant Xiao by himself and/or through his companies, affiliates, agents, and/or business partners, has in the past and continues to infringe the '943 patent in violation of 35 U.S.C. § 271(c) by contributing to the direct infringement of others by at least supplying methods and systems, including computer algorithms, code, software, or technology, such as that referred to as iEM, EPMS, and NPMSE, knowing that such methods and systems are especially made or especially adapted for use in infringing the patented technology and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 62 of the Complaint.


63.     Upon information and belief, Defendant Xiao by himself and/or through his companies, affiliates, agents, and/or business partners, has in the past and continues to infringe the '943 patent in violation of 35 U.S.C. § 271(f)(1) by supplying or causing to be supplied in or from the United States all or a substantial portion of components, uncombined in whole or in part, of methods and systems, including software and technology, such as that referred to as iEM,

EPMS, and NPMSE, for monitoring the health of equipment and systems that are covered by the '943 patent in such a manner as to actively induce the combination of the components outside of the United States in an infringing manner.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 63 of the Complaint.

64.     Upon information and belief, Defendant Xiao by himself and/or through his companies, affiliates, agents, and/or business partners, also has in the past and continues to infringe the '943 patent in violation of 35 U.S.C. § 271(f)(2) by supplying or causing to be supplied in or from the United States a component, uncombined in whole or in part, of methods and systems, including software and technology, such as that referred to as iEM, EPMS, and NPMSE, for monitoring the health of equipment and systems that is especially made or especially adapted for use in such methods and systems and not a staple article or commodity of commerce suitable for substantial noninfringing use, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in an infringing manner.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 64 of the Complaint.

65.     Defendant Xiao's direct infringement, contributory infringement and/or inducement to infringe the '943 patent has injured SmartSignal, and SmartSignal is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 65 of the Complaint.

66.     Unless enjoined by the Court, Defendant Xiao will continue to injure SmartSignal by infringing the '943 patent.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 66 of the Complaint.

## SECOND CAUSE OF ACTION: INFRINGEMENT OF THE '939 PATENT

67.     SmartSignal hereby repeats and re-alleges the allegations contained in paragraphs 1 to 66, as if fully set forth herein.

**ANSWER:**

Dr. Xu realleges and incorporates by reference his responses to paragraphs 1-66 of his

answer as his response to paragraph 67 of this Second Cause of Action as if fully set forth herein.

68.     Upon information and belief, Defendant Xiao by himself and/or through his companies, affiliates, agents, and/or business partners, has in the past and continues to infringe the '939 patent in violation of 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell methods and systems, including software and technology, such as that referred to as iEM, EPMS, and NPMSE, for monitoring the health of equipment and systems that are covered by the '939 patent within the United States and within this District.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 68 of the Complaint.

69.     Upon information and belief, Defendant Xiao by himself and/or through his companies, affiliates, agents, and/or business partners, has in the past and continues to induce the direct infringement by end users of the '939 patent in violation of 35 U.S.C. § 271(b) with the specific intent to cause and/or encourage such direct infringement of the '939 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '939 patent.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 69 of the Complaint.

70.     Upon information and belief, Defendant Xiao by himself and/or through his companies, affiliates, agents, and/or business partners, has in the past and continues to infringe the '939 patent in violation of 35 U.S.C. § 271(c) by contributing to the direct infringement of others by at least supplying methods and systems, including computer algorithms, code, software or technology, such as that referred to as iEM, EPMS, and NPMSE, knowing that such methods and systems are especially made or especially adapted for use in infringing the patented technology and not a staple article or commodity of commerce suitable for substantial

non-infringing use.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 70 of the Complaint.

71.     Upon information and belief, Defendant Xiao by himself and/or through his companies, affiliates, agents, and/or business partners, has in the past and continues to infringe the '939 patent in violation of 35 U.S.C. § 271(f)(1) by supplying or causing to be supplied in or from the United States all or a substantial portion of components, uncombined in whole or in part, of methods and systems, including software and technology, such as that referred to as iEM, EPMS, and NPMSE, for monitoring the health of equipment and systems that are covered by the '939 patent in such a manner as to actively induce the combination of the components outside of the United States in an infringing manner.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 71 of the Complaint.

72.     Upon information and belief, Defendant Xiao by himself and/or through his companies, affiliates, agents, and/or business partners, also has in the past and continues to infringe the '939 patent in violation of 35 U.S.C. § 271(f)(2) by supplying or causing to be supplied in or from the United States a component, uncombined in whole or in part, of methods and systems, including software and technology, such as that referred to as iEM, EPMS, and NPMSE, for monitoring the health of equipment and systems that is especially made or especially adapted for use in such methods and systems and not a staple article or commodity of commerce suitable for substantial noninfringing use, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in an infringing manner.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 72 of the Complaint.

73.     Defendant Xiao's direct infringement, contributory infringement and/or inducement to infringe the '939 patent has injured SmartSignal, and SmartSignal is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 73 of the Complaint.


74.    Unless enjoined by the Court, Xiao will continue to injure SmartSignal by infringing the '939 patent.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 74 of the Complaint.


### THIRD CAUSE OF ACTION: INFRINGEMENT OF THE '886 PATENT

75.    SmartSignal hereby repeats and re-alleges the allegations contained in paragraphs 1 to 74, as if fully set forth herein.

**ANSWER:**

Dr. Xu realleges and incorporates by reference his responses to paragraphs 1-74 of his

answer as his response to paragraph 75 of this Third Cause of Action as if fully set forth herein.


76.    Upon information and belief, Defendant Xiao by himself and/or through his companies, affiliates, agents, and/or business partners, has in the past and continues to infringe the '886 patent in violation of 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell methods and systems, including software and technology, such as that referred to as iEM, EPMS, and NPMSE, for monitoring equipment health and systems that are covered by the '886 patent within the United States and within this District.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 76 of the Complaint.


77.    Upon information and belief, Defendant Xiao by himself and/or through his companies, affiliates, agents, and/or business partners, has in the past and continues to induce the direct infringement by end users of the '886 patent in violation of 35 U.S.C. § 271(b) with the specific intent to cause and/or encourage such direct infringement of the '886 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct

infringement of the '886 patent.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 77 of the Complaint.


78.     Upon information and belief, Defendant Xiao by himself and/or through his companies, affiliates, agents, and/or business partners, has in the past and continues to infringe the '886 patent in violation of 35 U.S.C. § 271(c) by contributing to the direct infringement of others by at least supplying methods and systems, including computer algorithms, code, software or technology, such as that referred to as iEM, EPMS, and NPMSE, knowing that such methods and systems are especially made or especially adapted for use in infringing the patented technology and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 78 of the Complaint.


79.     Upon information and belief, Defendant Xiao by himself and/or through his companies, affiliates, agents, and/or business partners, has in the past and continues to infringe the '886 patent in violation of 35 U.S.C. § 271(f)(1) by supplying or causing to be supplied in or from the United States all or a substantial portion of components, uncombined in whole or in part, of methods and systems, including software and technology, such as that referred to as iEM, EPMS, and NPMSE, for monitoring the health of equipment and systems that are covered by the '886 patent in such a manner as to actively induce the combination of the components outside of the United States in an infringing manner.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 79 of the Complaint.


80.     Upon information and belief, Defendant Xiao by himself and/or through his companies, affiliates, agents, and/or business partners, also has in the past and continues to infringe the '886 patent in violation of 35 U.S.C. § 271(f)(2) by supplying or causing to be supplied in or from the United States a component, uncombined in whole or in part, of methods and systems, including software and technology, such as that referred to as iEM, EPMS, and NPMSE, for monitoring the health of equipment and systems that is especially made or especially adapted for use in such methods and systems and not a staple article or commodity of commerce suitable for substantial noninfringing use, knowing that such component is so made or

adapted and intending that such component will be combined outside of the United States in an infringing manner.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 80 of the Complaint.

81.     As a co-inventor listed on the face of the patent, Defendant Xiao had notice of the '886 patent.

**ANSWER:**

Admitted.

82.     Defendant Xiao's direct infringement, contributory infringement and/or inducement to infringe the '886 patent has injured SmartSignal, and SmartSignal is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 82 of the Complaint.

83.     Unless enjoined by the Court, Defendant Xiao will continue to injure SmartSignal by infringing the '886 patent.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 83 of the Complaint.

### FOURTH CAUSE OF ACTION: INFRINGEMENT OF THE '385 PATENT

84.     SmartSignal hereby repeats and re-alleges the allegations contained in paragraphs 1 to 83, as if fully set forth herein.

**ANSWER:**

Dr. Xu realleges and incorporates by reference his responses to paragraphs 1-83 of his answer as his response to paragraph 84 of this Fourth Cause of Action as if fully set forth herein.

85.     Upon information and belief, Defendant Xiao by himself and/or through his companies, affiliates, agents, and/or business partners, has in the past and continues to infringe the '385 patent in violation of 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell methods and systems, including software and technology, such as that referred to as iEM, EPMS, and NPMSE, for monitoring the health of equipment and systems that are covered by the '385 patent within the United States and within this District.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 85 of the Complaint.

86.     Upon information and belief, Defendant Xiao by himself and/or through his companies, affiliates, agents, and/or business partners, has in the past and continues to induce the direct infringement by end users of the '385 patent in violation of 35 U.S.C. § 271(b) with the specific intent to cause and/or encourage such direct infringement of the '385 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '385 patent.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 86 of the Complaint.

87.     Upon information and belief, Defendant Xiao by himself and/or through his companies, affiliates, agents, and/or business partners, has in the past and continues to infringe the '385 patent in violation of 35 U.S.C. § 271(c) by contributing to the direct infringement of others by at least supplying methods and systems, including computer algorithms, code, software or technology, such as that referred to as iEM, EPMS, and NPMSE, knowing that such methods and systems are especially made or especially adapted for use in infringing the patented technology and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 87 of the Complaint.

88.     Upon information and belief, Defendant Xiao by himself and/or through his companies, affiliates, agents, and/or business partners, has in the past and continues to infringe the '385 patent in violation of 35 U.S.C. § 271(f)(1) by supplying or causing to be supplied in or from the United States all or a substantial portion of components, uncombined in whole or in part, of methods and systems, including software and technology, such as that referred to as iEM, EPMS, and NPMSE, for monitoring the health of equipment and systems that are covered by the '385 patent in such a manner as to actively induce the combination of the components outside of the United States in an infringing manner.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 88 of the Complaint.


89.     Upon information and belief, Defendant Xiao by himself and/or through his companies, affiliates, agents, and/or business partners, also has in the past and continues to infringe the '385 patent in violation of 35 U.S.C. § 271(f)(2) by supplying or causing to be supplied in or from the United States a component, uncombined in whole or in part, of methods and systems, including software and technology, such as that referred to as iEM, EPMS, and NPMSE, for monitoring the health of equipment and systems that is especially made or especially adapted for use in such methods and systems and not a staple article or commodity of commerce suitable for substantial noninfringing use, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in an infringing manner.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 89 of the Complaint.


90.     Defendant Xiao's direct infringement, contributory infringement and/or inducement to infringe the '385 patent has injured SmartSignal, and SmartSignal is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 90 of the Complaint.


91.     Unless enjoined by the Court, Defendant Xiao will continue to injure SmartSignal by infringing the '385 patent.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 91 of the Complaint.

### FIFTH CAUSE OF ACTION: INFRINGEMENT OF THE '597 PATENT

92. SmartSignal hereby repeats and re-alleges the allegations contained in paragraphs 1 to 91, as if fully set forth herein.

**ANSWER:**

Dr. Xu realleges and incorporates by reference his responses to paragraphs 1-91 of his

answer as his response to paragraph 92 of this Fifth Cause of Action as if fully set forth herein.

93. Upon information and belief, Defendant Xiao by himself and/or through his companies, affiliates, agents, and/or business partners, has in the past and continues to infringe the '597 patent in violation of 35 U.S.C. § 271(a) by making, having made, using, selling and/or offering to sell methods and systems, including software and technology, such as that referred to as iEM, EPMS and NPMSE, for monitoring the health of equipment and systems that are covered by the '597 patent within the United States and within this District.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 93 of the Complaint.

94. Upon information and belief, Defendant Xiao by himself and/or through his companies, affiliates, agents, and/or business partners, has in the past and continues to induce the direct infringement by end users of the '597 patent in violation of 35 U.S.C. § 271(b) with the specific intent to cause and/or encourage such direct infringement of the '597 patent and/or with deliberate indifference of a known risk that such activities would cause and/or encourage direct infringement of the '597 patent.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 94 of the Complaint.

95.     Upon information and belief, Defendant Xiao by himself and/or through his companies, affiliates, agents, and/or business partners, has in the past and continues to infringe the '597 patent in violation of 35 U.S.C. § 271(c) by contributing to the direct infringement of others by at least supplying methods and systems, including computer algorithms, code, software, or technology, such as that referred to as iEM, EPMS, and NPMSE, knowing that such methods and systems are especially made or especially adapted for use in infringing the patented technology and not a staple article or commodity of commerce suitable for substantial non-infringing use.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 95 of the Complaint.


96.     Upon information and belief, Defendant Xiao by himself and/or through his companies, affiliates, agents, and/or business partners, has in the past and continues to infringe the '597 patent in violation of 35 U.S.C. § 271(f)(1) by supplying or causing to be supplied in or from the United States all or a substantial portion of components, uncombined in whole or in part, of methods and systems, including software and technology, such as that referred to as iEM, EPMS, and NPMSE, for monitoring the health of equipment and systems that are covered by the '597 patent in such a manner as to actively induce the combination of the components outside of the United States in an infringing manner.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 96 of the Complaint.


97.     Upon information and belief, Defendant Xiao by himself and/or through his companies, affiliates, agents, and/or business partners, also has in the past and continues to infringe the '597 patent in violation of 35 U.S.C. § 271(f)(2) by supplying or causing to be supplied in or from the United States a component, uncombined in whole or in part, of methods and systems, including software and technology, such as that referred to as iEM, EPMS, and NPMSE, for monitoring the health of equipment and systems that is especially made or especially adapted for use in such methods and systems and not a staple article or commodity of commerce suitable for substantial noninfringing use, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in an infringing manner.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 97 of the Complaint.

98.     Defendant Xiao's direct infringement, contributory infringement and/or inducement to infringe the '597 patent has injured SmartSignal, and SmartSignal is entitled to recover damages adequate to compensate for such infringement pursuant to 35 U.S.C. § 284.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 98 of the Complaint.

99.     Unless enjoined by the Court, Defendant Xiao will continue to injure SmartSignal by infringing the '597 patent.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 99 of the Complaint.

## SIXTH CAUSE OF ACTION: BREACH OF CONTRACT

100.     SmartSignal hereby repeats and re-alleges the allegations contained in paragraphs 1 to 99, as if fully set forth herein.

**ANSWER:**

Dr. Xu realleges and incorporates by reference his responses to paragraphs 1-99 of his answer as his response to paragraph 100 of this Sixth Cause of Action as if fully set forth herein.

101.     The Employment Agreement between SmartSignal and Defendant Xiao constitutes an enforceable agreement.

**ANSWER:**

Dr. Xu lacks sufficient information as to which portions of the Employment Agreement SmartSignal contends remain enforceable so as to form a belief as to the accuracy of the allegations of paragraph 101 of the Complaint.

102.     Upon information and belief, Defendant Xiao copied, disclosed, and/or used

35

SmartSignal's confidential and trade secret information for the benefit of others, including himself, both during and after his termination of employment with SmartSignal.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 102 of the Complaint.

103.    Defendant Xiao's copying, disclosing and/or using SmartSignal's confidential and trade secret information in this manner is a material breach of the Employment Agreement.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 103 of the Complaint.

104.    Upon information and belief, Defendant Xiao engaged in business activities in the United States in direct competition with the primary products and/or services being developed, manufactured and sold by SmartSignal.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 104 of the Complaint.

105.    Defendant Xiao's engaging in business activities in this anti-competitive manner was a material breach of the Employment Agreement.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 105 of the Complaint.

106.    Upon information and belief, Defendant Xiao solicited for and/or did business with at least one potential customer of SmartSignal during his employment with SmartSignal.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 106 of the Complaint.

107.    Defendant Xiao's engaging in solicitation activities in this anti-competitive manner was a material breach of the Employment Agreement.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 107 of the Complaint.


108.    SmartSignal has been damaged by Defendant Xiao's material breaches of the Employment Agreement in an amount to be determined at trial.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 108 of the Complaint.


### SEVENTH CAUSE OF ACTION: VIOLATION OF THE ILLINOIS TRADE SECRETS ACT

109.    SmartSignal hereby repeats and re-alleges the allegations contained in paragraphs 1 to 108, as if fully set forth herein.

**ANSWER:**

Dr. Xu realleges and incorporates by reference his responses to paragraphs 1-108 of his answer as his response to paragraph 109 of this Seventh Cause of Action as if fully set forth herein.


110.    SmartSignal has invested substantial time, money and effort in developing and maintaining the secrecy of its confidential and trade secret information, including the use, development and maintenance of SmartSignal's software tool kit.

**ANSWER:**

Dr. Xu lacks sufficient information to form a belief as to the accuracy of the allegations of paragraph 110 of the Complaint.


111.    SmartSignal derives substantial economic value from its confidential and trade

secret information, including its use, development and maintenance of SmartSignal's software tool kit.

**ANSWER:**

Dr. Xu lacks sufficient information to form a belief as to the accuracy of the allegations of paragraph 111 of the Complaint.

112.    SmartSignal takes affirmative measures to keep its confidential and trade secret information secret, including internal and external physical security.

**ANSWER:**

Dr. Xu lacks sufficient information to form a belief as to the accuracy of the allegations of paragraph 112 of the Complaint.

113.    Specifically, SmartSignal has taken affirmative measures to maintain the secrecy and confidentiality of SmartSignal's software tool kit.

**ANSWER:**

Dr. Xu lacks sufficient information to form a belief as to the accuracy of the allegations of paragraph 113 of the Complaint.

114.    The algorithms of SmartSignal's software tool kit are not available to the public or to SmartSignal's customers.

**ANSWER:**

Dr. Xu lacks sufficient information to form a belief as to the accuracy of the allegations of paragraph 114 of the Complaint.

115.    Within SmartSignal, access to SmartSignal's software tool kit is restricted to employees that need access in order to perform their job duties. Employees with access to

SmartSignal's software tool kit are also subject to a non-disclosure agreement.

**ANSWER:**

Dr. Xu lacks sufficient information to form a belief as to the accuracy of the allegations of paragraph 115 of the Complaint.

116.   SmartSignal's software tool kit constitutes a trade secret under the ITSA.

**ANSWER:**

Dr. Xu lacks sufficient information to form a belief as to the accuracy of the allegations of paragraph 116 of the Complaint.

117.   By virtue of his prior Employment Agreement with SmartSignal and pursuant to the ITSA, Defendant Xiao is under a continuing duty to maintain the confidentiality of SmartSignal's confidential and trade secret information, including, but not limited to, SmartSignal's software tool kit.

**ANSWER:**

Dr. Xu admits that he considers himself to be under a continuing duty to maintain the confidentiality of any legitimate SmartSignal trade secrets.  Dr. Xu lacks sufficient information to form a belief as to the accuracy of the remaining allegations of paragraph 117 of the Complaint.

118.   Despite his obligation to maintain the confidentiality of SmartSignal's trade secrets, Defendant Xiao has intentionally and willfully misappropriated such trade secrets in violation of the ITSA.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 118 of the Complaint.

119.   SmartSignal has no adequate remedy at law to protect against Defendant Xiao's illegal misappropriation, use and disclosure of SmartSignal's trade secrets.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 119 of the Complaint.

120.   Unless Defendant Xiao is enjoined from using SmartSignal's confidential, proprietary and trade secret information, SmartSignal will suffer further immediate and irreparable injury.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 120 of the Complaint.

121.   As a result of Defendant Xiao's actions, SmartSignal has suffered damages in an amount to be determined at trial.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 121 of the Complaint.

## EIGHTH CAUSE OF ACTION: VIOLATION OF THE COMPUTER FRAUD & ABUSE ACT

122.   SmartSignal hereby repeats and re-alleges the allegations contained in paragraphs 1 to 121, as if fully set forth herein.

**ANSWER:**

Dr. Xu realleges and incorporates by reference his responses to paragraphs 1-121 of his answer as his response to paragraph 122 of this Eighth Cause of Action as if fully set forth herein.

123.   Upon information and belief, Defendant Xiao accessed at least one SmartSignal computer without authorization and/or by exceeding authorized access to obtain information from one or more protected computers and/or servers on SmartSignal's computer network.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 123 of the Complaint.

124.    Such actions were intentional and for the commercial advantage of Defendant Xiao.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 124 of the Complaint.

125.    Upon information and belief, these actions recklessly caused damage to SmartSignal by impairing the integrity and/or availability of company data.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 125 of the Complaint.

126.    Such damage was not discovered until at least 2010 in part due to Defendant Xiao's efforts to actively conceal his conduct while at SmartSignal.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 126 of the Complaint.

127.    Upon information and belief, these actions caused a loss of at least $5,000 to SmartSignal during a one-year period based at least in part on lost business because of Defendant Xiao's activities.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 127 of the Complaint.

128.    The intentional unauthorized access of the one or more computers or servers protected on the SmartSignal network is a violation of 18 U.S.C. § 1030(a).

41

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 128 of the Complaint.

129.   SmartSignal, under 18 U.S.C. § 1030(g), is entitled to damages and injunctive relief.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 129 of the Complaint.

**NINTH CAUSE OF ACTION: UNFAIR COMPETITION UNDER 15 U.S.C. § 1125(a)**

130.   SmartSignal hereby repeats and re-alleges the allegations contained in paragraphs 1 to 129, as if fully set forth herein.

**ANSWER:**

Dr. Xu realleges and incorporates by reference his responses to paragraphs 1-129 of his answer as his response to paragraph 130 of this Ninth Cause of Action as if fully set forth herein.

131.   By copying, using and/or disclosing SmartSignal's confidential, proprietary and/or trade secret information, Defendant Xiao benefitted by at least aiding or enabling himself, China Real-Time and/or SolidWay to shortcut the lead time and investments needed to develop their own methods, systems and software products for monitoring the health of equipment and systems to compete with SmartSignal.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 131 of the Complaint.

132.   By copying, using and/or disclosing SmartSignal's confidential and/or proprietary information, Defendant Xiao was able to submit the Chinese proposal as his own work.

42

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 132 of the Complaint.


133.   By copying, using, and/or disclosing SmartSignal's confidential and/or proprietary information, Defendant Xiao has been passing off technology and products as his own when they are not.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 133 of the Complaint.


134.   The aforesaid wrongful acts of Defendant Xiao constitute unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a).

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 134 of the Complaint.


**TENTH CAUSE OF ACTION: UNFAIR COMPETITION UNDER ILLINOIS COMMON LAW**

135.   SmartSignal hereby repeats and re-alleges the allegations contained in paragraphs 1 to 134, as if fully set forth herein.

**ANSWER:**

Dr. Xu realleges and incorporates by reference his responses to paragraphs 1-134 of his

answer as his response to paragraph 135 of this Tenth Cause of Action as if fully set forth herein.


136.   By copying, using and/or disclosing SmartSignal's confidential, proprietary and/or trade secret information, Defendant Xiao benefitted by at least aiding or enabling himself, China Real-Time and/or SolidWay to shortcut the lead time and investments needed to develop their own methods, systems and software products for monitoring the health of equipment and systems to compete with SmartSignal.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 136 of the Complaint.


137.   By copying, using and/or disclosing SmartSignal's confidential, proprietary and/or trade secret information, Defendant Xiao was able to submit the Chinese proposal as his own work.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 137 of the Complaint.


138.   The aforesaid wrongful acts of Defendant Xiao constitute unfair competition under the common law of Illinois.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 138 of the Complaint.


## ELEVENTH CAUSE OF ACTION: VIOLATION OF
## THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

139.   SmartSignal hereby repeats and re-alleges the allegations contained in paragraphs 1 to 138, as if fully set forth herein.

**ANSWER:**

Dr. Xu realleges and incorporates by reference his responses to paragraphs 1-138 of his answer as his response to paragraph 139 of this Eleventh Cause of Action as if fully set forth herein.


140.   By copying, using and/or disclosing SmartSignal's confidential, proprietary and/or trade secret information, Defendant Xiao has attempted to and/or succeeded in passing off at least the methods, systems and software products of China Real-Time and/or SolidWay as their own.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 140 of the Complaint.


141. The aforesaid wrongful acts of Defendant Xiao constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 141 of the Complaint.


### TWELFTH CAUSE OF ACTION: VIOLATION OF THE ILLINOIS CONSUMER FRAUD & DECEPTIVE BUSINESS PRACTICES ACT

142. SmartSignal hereby repeats and re-alleges the allegations contained in paragraphs 1 to 141, as if fully set forth herein.

**ANSWER:**

Dr. Xu realleges and incorporates by reference his responses to paragraphs 1-141 of his answer as his response to paragraph 142 of this Twelfth Cause of Action as if fully set forth herein.


143. Defendant Xiao's aforesaid deceptive trade practices further constitute a willful violation of the Illinois Consumer Fraud & Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 143 of the Complaint.


### THIRTEENTH CAUSE OF ACTION: BREACH OF FIDUCIARY DUTY

144. SmartSignal hereby repeats and re-alleges the allegations contained in paragraphs 1 to 143, as if fully set forth herein.

**ANSWER:**

Dr. Xu realleges and incorporates by reference his responses to paragraphs 1-143 of his answer as his response to paragraph 144 of this Thirteenth Cause of Action as if fully set forth herein.

145. While still employed at SmartSignal, Defendant Xiao engaged in competitive activity, including at least submitting the Chinese proposal to the Chinese government and others for personal gain.

**ANSWER:**

Dr. Xu admits that he submitted the 2004 Chinese white paper to a conference, which paper accompanies the Complaint as Exhibit 7,. Dr. Xu denies each and every remaining allegation of paragraph 145 of the Complaint.

146. By engaging in the aforesaid wrongful acts, Defendant Xiao violated his duty of loyalty as an employee of SmartSignal not to engage in competition with SmartSignal while employed by SmartSignal.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 146 of the Complaint.

147. Defendant Xiao acted in the foregoing anti-competitive manner willfully, with fraud, malice, and/or gross negligence.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 147 of the Complaint.

148. As a result of Defendant Xiao's actions, SmartSignal has suffered damages in an amount to be determined at trial.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 148 of the Complaint.

**FOURTEENTH CAUSE OF ACTION: CONVERSION**

149.    SmartSignal hereby repeats and re-alleges the allegations contained in paragraphs 1 to 148, as if fully set forth herein.

**ANSWER:**

Dr. Xu realleges and incorporates by reference his responses to paragraphs 1-148 of his answer as his response to paragraph 149 of this Fourteenth Cause of Action as if fully set forth herein.

150.    Upon information and belief, Defendant Xiao assumed unauthorized and wrongful control over SmartSignal's property, including, but not limited to, computer algorithms, code, software and related materials.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 150 of the Complaint.

151.    SmartSignal has an absolute right to immediate and exclusive possession of the computer algorithms, code, software and related materials.

**ANSWER:**

Dr. Xu lacks sufficient information as to the property referred to to form a belief as to the accuracy of the allegations of paragraph 151 of the Complaint.

152.    Defendant Xiao was not authorized or given permission to remove any of SmartSignal's property from SmartSignal during his employment, nor was he authorized or given permission to keep in his possession or control any of SmartSignal's property upon his resignation.

**ANSWER:**

Dr. Xu denies that he has ever taken, utilized or retained possession of any of SmartSignal's property without SmartSignal's consent.

153.    Upon information and belief, since leaving SmartSignal's employ, Defendant Xiao has used and will continue to use SmartSignal's algorithms, code, software and related materials in the course of his business dealings with at least SolidWay and China Real-Time.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 153 of the Complaint.

154.    SmartSignal has been and will continue to be damaged by Defendant Xiao's wrongful retention of SmartSignal's algorithms, code software and related materials.

**ANSWER:**

Dr. Xu denies each and every allegation of paragraph 154 of the Complaint.

## ADDITIONAL OR AFFIRMATIVE DEFENSES

For his additional or affirmative defenses, Dr. Xu alleges as follows:

### FIRST ADDITIONAL OR AFFIRMATIVE DEFENSE: NO WRONGFUL ACTS

1.    Dr. Xu has at all times maintained the confidentiality of any arguable SmartSignal trades secrets and has committed no torts, statutory violations or contractual breaches for which he bears any legal liability to SmartSignal or anyone else.

2.    Dr. Xu committed no torts, statutory violations or contractual breaches by submitting the paper that constitutes Exhibit 7 to the Complaint to a Chinese conference in 2004. The paper was not a commercial offer and it did not disclose any trade secret or confidential

information of SmartSignal; nor did it constitute or result in any commercial activity in competition with SmartSignal.

3.     Dr. Xu committed no torts, statutory violations, or contractual breaches in connection with the paper accompanying the Complaint as Exhibit 8. Dr. Xu did not prepare and has never had any connection with the paper accompanying the Complaint as Exhibit 8. Dr. Xu has never had any relationship with the China Real-Time Company. In the absence of any such relationship, he cannot be held liable for any alleged actions of that company under any count of the Complaint.

4.     Dr. Xu committed no torts, statutory violations or contractual breaches by permitting the publication of the paper constituting Exhibit 10 to the Complaint or by permitting his name to be used on the one page document constituting Exhibit 9 to the Complaint. Dr. Xu's relationship with the SolidWay company was and is limited to those actions that were identified in his responses to paragraph 51 of the Complaint, *i.e.*, that his only relationships with SolidWay are that it was founded by a friend of his who had moved back to China; he permitted his friend to use his name on the one page proposal that accompanies the Complaint as Exhibit 9; and he assisted his friend with the white paper accompanying the Complaint as Exhibit 10 after he had left SmartSignal. So far as Dr. Xu is aware, Exhibit 9 never resulted in any commercial project and SolidWay is not a competitor of SmartSignal. Dr. Xu has no current relationship or affiliation with SolidWay. Dr. Xu on information and belief states that SolidWay has not used, made, sold or offered for sale in the United States any commercial product; nor has Dr. Xu engaged in any act prohibited by Sections 271(b), 271(c) or 271(f) of the U.S. Patent Code, thereby precluding any legitimate claim of U.S. patent infringement by SmartSignal as alleged in Counts 1-5 of the Complaint. Dr. Xu further states that neither Exhibit 9 nor Exhibit 10 disclose

any trade secrets of SmartSignal and that he never disclosed any confidential information or trade secrets to SolidWay, thereby precluding any legitimate claim under the remaining Counts 6-14 of the Complaint. SmartSignal itself has publically disclosed far more detailed information about its technology than is provided in any of the papers attached as Exhibits 7-10 to the Complaint.

### SECOND ADDITIONAL OR AFFIRMATIVE DEFENSE: IMPERMISSIBLE EXTENSION OF US PATENT LAWS BEYOND THE TERRITORY OF THE UNITED STATES

5.     SmartSignal's patent infringement claims constitute an improper and impermissible effort to extend the reach of its United States Patents beyond the territorial limits of the United States.

6.     The only products or services that SmartSignal accuses of infringing its patents are accused systems or products offered by two alleged Chinese companies, China-Real Time and SolidWay. SmartSignal does not allege that either company has ever made, used, sold or offered for sale any of the accused products or services in the United States, and Dr. Xu is not aware of any such activity in the United States.

7.     With regard to the allegations of contributory infringement of the SmartSignal patents under Sections 271(b), 271(c) and/or 271(f), Dr. Xu has not sent any code or algorithms abroad to either of those companies that could be deemed to constitute a "component" or an "especially made" product or system that is not a "staple article or commodity of commerce" within the meaning of any of those statutory provisions.

8.     Further, none of the critical steps in carrying out each claimed element of its method patent claims are performed in the United States by the accused Chinese companies or products.

9.    In the absence of any such connections with the United States, SmartSignal's patent infringement claims constitute an effort to improperly extend the reach of its United States patents beyond the territorial limits of the United States, to which they are confined.

### THIRD ADDITIONAL OR AFFIRMATIVE DEFENSE: FAILURE TO JOIN NECESSARY AND REQUIRED PARTIES

10.    The only products or services that SmartSignal accuses of patent infringement are those allegedly offered by two Chinese companies, China Real-Time and SolidWay.

11.    SmartSignal's failure to join either of those companies constitutes a failure to join required parties within the meaning of Rule 19 of the Federal Rules of Civil Procedure.

### FOURTH ADDITIONAL OR AFFIRMATIVE DEFENSE: FAILURE TO DISCLOSE BEST MODE

12.    Dr. Xu on information and belief states that one or more of the patents asserted in Counts 1, 2, 4 and 5 of the Complaint are invalid for failure to comply with the best mode requirement imposed under the United States Patent Laws.

### FIFTH ADDITIONAL OR AFFIRMATIVE DEFENSE: INVALIDITY OF THE PATENTS FOR LACK OF NOVELTY

13.    Dr. Xu on information and belief states that one or more of the claims in the patents asserted in Counts 1, 2, 4, and/or 5 of the Complaint are invalid for lack of novelty under the United States Patent Laws.

### SIXTH ADDITIONAL OR AFFIRMATIVE DEFENSE: INVALIDITY OF THE PATENTS FOR OBVIOUSNESS

14.    Dr. Xu on information and belief states that one or more of the claims in the patents asserted in Counts 1, 2, 4, and/or 5 of the Complaint are invalid for lack of non-obviousness under the United States Patent Laws.

### SEVENTH ADDITIONAL OR AFFIRMATIVE DEFENSE:
### INVALIDITY OF THE PATENTS FOR FAILURE TO COMPLY WITH SECTION 112

15.     Dr. Xu on information and belief states that one or more of the claims in the patents asserted in Counts 1, 2, 4, and/or 5 of the Complaint are invalid for failure to comply with the requirements of Section 112 of the United States Patent Laws.

### EIGHTH ADDITIONAL OR AFFIRMATIVE DEFENSE:
### NO MISAPPROPRIATION OR DISCLOSURE OF CONFIDENTIAL INFORMATION

16.     Dr. Xu has at all times maintained the confidentiality of any legitimate SmartSignal trade secrets and confidential information and Dr. Xu returned to SmartSignal, upon his departure over three years ago any and all items constituting SmartSignal property, thereby precluding any legitimate claim against him under the causes of action asserted against him in Counts 6-14 of the Complaint.

### NINTH ADDITIONAL OR AFFIRMATIVE DEFENSE: STATUTES OF LIMITATIONS

17.     Dr. Xu on information and belief states that one or more of the causes of action asserted in Counts 7-14 of the Complaint, including any claims related to the publication of the 2004 Chinese Paper accompanying the Complaint as Exhibit 7, are barred in whole or in part by the applicable statutes of limitations, including but not limited to the five year statute of limitations in the Illinois Trade Secrets Act and the two year statute of limitations in the Computer Fraud and Abuse Act.

### TENTH ADDITIONAL OR AFFIRMATIVE DEFENSE: PREEMPTION BY THE ITSA

18.     Counts 10-14 of the Complaint purport to assert claims under Illinois statutes or common law for alleged misappropriation of trade secrets or confidential information by Dr. Xu. Any such claims are preempted by the Illinois Trade Secrets Act, Section 765 ILCS 1065(8)(a),

which precludes recovery for any such acts under any other Illinois law apart from the Trade Secrets Act.

### ELEVENTH ADDITIONAL OR AFFIRMATIVE DEFENSE: LACHES

19.     Upon his departure from SmartSignal over three years ago, Dr. Xu provided SmartSignal with any and all SmartSignal property, including print-outs of all research notes, publications and communications that could be deemed to contain any confidential or proprietary information of SmartSignal.

20.     Since his departure, SmartSignal never informed Dr. Xu prior to the filing and service of the Complaint in this action that it contended he had failed to return any property allegedly belonging to SmartSignal.

21.     Dr. Xu relied upon that silence to proceeding with his life since departing from SmartSignal.

22.     SmartSignal's failure to timely assert any such claim bar that claim under the principles of laches.

### TWELFTH ADDITIONAL OR AFFIRMATIVE DEFENSE: WAIVER

23.     Upon his departure from SmartSignal over three years ago, Dr. Xu provided SmartSignal with any and all SmartSignal property, including print-outs of all research notes, publications and communications that could be deemed to contain any confidential or proprietary information of SmartSignal.

24.     Since his departure, SmartSignal never informed Dr. Xu prior to the filing and service of the Complaint in this action that it contended he had failed to return any property allegedly belonging to SmartSignal.

25.     Dr. Xu relied upon that silence to proceeding with his life since departing from SmartSignal.

26.     SmartSignal's failure to timely assert any such claim bar that claim under the principles of waiver.

### THIRTEENTH ADDITIONAL OR AFFIRMATIVE DEFENSE: ESTOPPEL

27.     Upon his departure from SmartSignal over three years ago, Dr. Xu provided SmartSignal with any and all SmartSignal property, including print-outs of all research notes, publications and communications that could be deemed to contain any confidential or proprietary information of SmartSignal.

28.     Since his departure, SmartSignal never informed Dr. Xu prior to the filing and service of the Complaint in this action that it contended he had failed to return any property allegedly belonging to SmartSignal.

29.     Dr. Xu relied upon that silence to proceeding with his life since departing from SmartSignal.

30.     SmartSignal's failure to timely assert any such claim bar that claim under the principles of estoppel.

### FOURTEENTH ADDITIONAL OR AFFIRMATIVE DEFENSE TO ALL COUNTS OF THE COMPLAINT: ABSENCE OF ANY DAMAGES

31.     Nothing Dr. Xu has done has caused any actionable damages to SmartSignal, thereby precluding recovery under any count of the Complaint.

**WHEREFORE,** Dr. Xu Xiao requests that judgment be entered in his favor on each count of the SmartSignal Complaint, that he be granted his reasonable costs and attorneys' fees, and that the Court grant such other relief as it deems just and appropriate.

XU XIAO

Dated: July 23, 2010                    By: /s/ Thomas D. Rosenwein
                                            One of His Attorneys


Thomas D. Rosenwein (#02391597)
Don E. Glickman (#00972525)
Glickman, Flesch & Rosenwein
230 West Monroe Street, Suite 800
Chicago, Illinois 60606
(312) 346-1080

David R. Melton (#01883267)
404 Greenwood Street
Evanston, Illinois 60201
(847) 866-6198

Steven H. Jesser (#01337289)
Steven H. Jesser, Attorney at Law, PC
790 Frontage Road, Suite 110
Northfield, Illinois 60093
(847) 424-0200

## VERIFICATION

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury under the laws of the

United States of America that I have read the Answer and Additional or Affirmative Defenses

and, to the best of my ability, the facts stated therein are true and correct, except as to those facts

and matters stated to be upon information and belief, as to which matters I believe them to be

true.

_____

Xu Xiao

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I caused a copy of Defendant's Answer and Additional or Affirmative Defenses to Verified Complaint to be served by e-mail pursuant to the provisions of Fed.R.Civ.P. 5(b)(2)(D) or mail upon the following by depositing the same in the U.S. Mail, with proper postage prepaid, on July 23, 2010:

Steven C. Schroer, Esq.
Mark W. Hetzler, Esq.
Timothy P. Maloney, Esq.
Nichole L. Little, Esq.
Fitch, Even, Tabin & Flannery
120 South LaSalle Street, Suite 1600
Chicago, Illinois 60603

   /s/ Thomas D. Rosenwein    
One of the Attorneys for Defendant

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

SMARTSIGNAL CORPORATION, a Delaware
corporation,

               Plaintiff,

       v.

XU XIAO, a resident of Illinois,

               Defendant.

**No. 10 C 3799**

**The Honorable Rebecca R. Pallmeyer**

**Magistrate Judge Arlander Keys**

<u>**NOTICE OF FILING**</u>

TO:    Steven C. Schroer, Esq.
        Mark W. Hetzler, Esq.
        Timothy P. Maloney, Esq.
        Nichole L. Little, Esq.
        Fitch, Even, Tabin & Flannery
        120 South LaSalle Street, Suite 1600
        Chicago, Illinois 60603

      **PLEASE TAKE NOTICE** that on July 23, 2010, the undersigned filed with the Clerk of

the United States District Court for the Northern District of Illinois, Eastern Division,

Defendant's Answer and Additional or Affirmative Defenses to Verified Complaint, a copy of

which is herewith served upon you.

                                XIAO XU

                                By:  /s/ Thomas D. Rosenwein
                                    One of His Attorneys

Thomas D. Rosenwein (#02391597)
Don E. Glickman (#00972525)
Glickman, Flesch & Rosenwein
230 West Monroe Street, Suite 800
Chicago, Illinois 60606
(312) 346-1080

David R. Melton (#01883267)
404 Greenwood Street
Evanston, Illinois 60201
(847) 866-6198

Steven H. Jesser (#01337289)
Steven H. Jesser, Attorney at Law, PC
790 Frontage Road, Suite 110
Northfield, Illinois 60093
(847) 424-0200